IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MELISSA ALDRICH *on behalf of*          10-CV-6115-BR
DAVID A. ALDRICH,

          Plaintiff,                    OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


BRENT WELLS
KATHRYN TASSINARI
Harder Wells Baron & Manning, PC
474 Willamette Street
Suite 200
Eugene, OR 97401
(541) 686-1969

          Attorneys for Plaintiff

1  -  OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-1075
(206) 615-2494

          Attorneys for Defendant


**BROWN, Judge.**

     Melissa Aldrich, on behalf of her deceased husband,

Plaintiff David A. Aldrich[1], seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied David Aldrich's

application for Supplemental Security Income (SSI) under Title

XVI of the Social Security Act.  This Court has jurisdiction to

review the Commissioner's decision pursuant to 42 U.S.C.

§ 405(g).

     For the reasons that follow, the Court **REVERSES** the decision

_____

     [1] The Court refers to the decedent, David A. Aldrich, as
Plaintiff hereinafter even though this action is maintained by
his wife, Melissa Aldrich.

2  -  OPINION AND ORDER

of the Commissioner and **REMANDS** this matter pursuant to sentence
four of 42 U.S.C. § 405(g) for the immediate calculation and
award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on February 8, 2007,
alleging a disability onset date of January 1, 2000.  Tr. 57, 97,
103.[2]  The application was denied initially and on reconsider-
ation.  Tr. 57-64, 69-70.  An Administrative Law Judge (ALJ)
held a hearing on August 18, 2009.  Tr. 22-56.  Plaintiff
was represented by an attorney at the hearing, who amended
Plaintiff's alleged onset date from January 1, 2000, to the date
Plaintiff filed his application for SSI on February 8, 2007.
Tr. 22, 27.  Plaintiff and a vocational expert (VE) testified
at the hearing.  Tr. 23-56.

The ALJ issued a decision on September 25, 2009, in which he
found Plaintiff was not disabled and, therefore, was not entitled
to benefits.  Tr. 11-21.  That decision became the final decision
of the Commissioner on March 4, 2010, when the Appeals Council
denied Plaintiff's request for review.

---

[2] Citations to the official transcript of record filed by
the Commissioner on August 3, 2010, are referred to as "Tr."

## BACKGROUND

Plaintiff was born on July 20, 1967, and was 42 years old at the time of the hearing.  Tr. 28.  He completed the eighth grade. Tr. 28.  Plaintiff performed past relevant work as a fur farmer, delivery-truck driver, and cannery worker.  Tr. 50.

Plaintiff alleged disability due to an inability to maintain concentration and pace due to anxiety and depression and an inability to sit, stand, or walk for any duration due to pain and muscle weakness in his hips, lower back, and legs from conditions that affect his hips including Legg-Calve-Perthes disease (LCPD), congenital malformed femoral head, status post-comminuted fracture of the pelvis with internal fixation, and status post-two-hip replacements.  Tr. 97-99, 131-38, 181, 207.

Except when noted, Plaintiff did not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 15-16.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

     The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

     The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of the

5  -  OPINION AND ORDER

Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


### DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commis-sioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commis-sioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are

enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine

whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 8, 2007. Tr. 13.

At Step Two, the ALJ found Plaintiff had the following severe impairments: "Legg-Perthes Disease, status post hip replacement, obesity, depression and anxiety." Tr. 13. The ALJ found Plaintiff's diverticulitis and partial colon resection were nonsevere impairments. Tr. 13.

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, through his date last insured. Tr. 1137. The ALJ

found Plaintiff had the RFC to

> perform the full range of sedentary work as
> defined in 20 C.F.R. 416.967(a) except
> claimant is limited as follows:  sedentary
> push-pull only; no foot control operations;
> no climbing of ladders, ropes or scaffolds;
> no kneeling; no more than occasional climbing
> of ramps/stairs, stooping, crouching or
> crawling; no exposure to excessive vibration;
> and no working with, or around, moving
> machinery or at unprotected heights.
> Claimant would be limited to work involving
> no more than simple, routine 1-2 step and
> repetitive tasks in a low stress setting
> (defined as having no more than occasional
> changes in the work setting or decision-
> making required) with no production rate or
> pace work.

Tr. 14.

At Step Four, the ALJ concluded Plaintiff was unable to

perform any of his past relevant work.  Tr. 19.

At Step Five, the ALJ concluded Plaintiff had a sufficient

RFC to perform jobs that existed in significant numbers in the

national economy.  Tr. 19-20.  Specifically, the ALJ found

Plaintiff had the ability to perform jobs that require sedentary

work such as addresser and table worker.  Tr. 20.  Thus, the ALJ

concluded Plaintiff was not disabled and, therefore, was not

entitled to Social Security benefits.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly

discrediting Plaintiff's testimony as to the intensity,

persistence, and limiting effect of Plaintiff's symptoms;
(2) improperly discrediting the medical opinion of Plaintiff's
treating physician, Rick Hindmarsh, M.D.; and (3) failing to
include all of Plaintiff's functional limitations in formulating
the hypothetical posed to the VE.

**I.    ALJ's Reasons for Discrediting Plaintiff's Symptom
        Testimony.**

        Plaintiff contends the ALJ erred by failing to give legally
sufficient reasons for concluding that Plaintiff's testimony
"concerning the intensity, persistence, and limiting effects of"
his symptoms was not credible.

        In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.
*Smolen*, 80 F.3d at 1284.  If the claimant satisfies the above
test and there is not any affirmative evidence of malingering,
the ALJ can reject the claimant's pain testimony only if he
provides clear and convincing reasons for doing so.  *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester*, 81 F.3d

at 834)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id*.  The ALJ must specifically
identify "what testimony is not credible and what evidence
undermines the claimant's complaints."  *Parra*, 481 F.3d at 750
(quoting *Lester*, 81 F.3d at 834).  The ALJ noted Plaintiff had
produced objective evidence of his impairments, and the ALJ did
not identify any affirmative evidence of malingering.  The ALJ,
therefore, must provide clear and convincing reasons for
rejecting Plaintiff's subjective symptom testimony.

The ALJ found Plaintiff's testimony lacked credibility on
the following grounds:  (1) The record does not contain objective
evidence that Plaintiff's condition was growing worse, (2) the
record does not contain any evidence that Plaintiff was
prescribed an assistive device, (3) Plaintiff's active lifestyle
belied his claims of disability, and (4) the record reflects a
hiatus in Plaintiff's medical treatment from February 2007 to
July 2008.  Tr. 17.

## A.  Objective evidence that Plaintiff's condition was "worsening."

The ALJ discredited Plaintiff's subjective symptom testimony
on the ground that "[t]here is no objective evidence of changes
in claimant's physical condition."  Tr. 17.  The ALJ points to
x-rays of Plaintiff's pelvis taken in 2003, 2006, and 2008 that
did not reveal changes in Plaintiff's condition.  Tr. 17.

The Court notes the record reflects Plaintiff's LCPD is a

11 -  OPINION AND ORDER

degenerative condition that is permanent and worsens over time.
Tr. 207.  Plaintiff testified he suffered from worsening pain in
his hips, back, and legs, and reported the same to his
physicians.  Tr. 34-43, 123-30, 181-82, 207-08, 219, 262-63, 274.
Although the x-rays referenced by the ALJ do not necessarily
demonstrate a worsening of Plaintiff's condition, the x-rays
reveal significant abnormalities of Plaintiff's left hip, the
effects of hip replacements, and a set of screws and plates
inserted in Plaintiff's pelvis after an automobile accident in
1995.  Tr. 179, 306, 393.  In her February 5, 2007, examination
of Plaintiff and her review of his medical records, Laura S.
Rung, M.D., noted Plaintiff's complaints of worsening hip and leg
pain, decreased sensation in Plaintiff's lower left extremity, an
abnormal gait with significant lurch to the left, limited left
hip rotation and flexion, and a worsening atrophy of the muscle
in Plaintiff's left thigh.  Tr. 207-08.  In addition, the record
contains an Electromyogram (EMG) nerve-conduction study of
Plaintiff's lower extremities.  Tr. 206.  Although the EMG study
showed Plaintiff's nerve conduction was normal, it revealed
"widespread chronic denervation" that rendered Plaintiff "very
pain sensitive."  Tr. 206.  The ALJ characterized these
conclusions as merely "chronic denervation with pain
sensitivity."  Tr. 16.

The Court finds the ALJ's conclusion that the record does

not reflect a worsening of Plaintiff's condition is not supported
by substantial evidence in the record.

**B.   Plaintiff's need for an assistive device.**

The ALJ also discredited Plaintiff's testimony on the ground
that an assistive device was not "prescribed" for him despite his
stated need for one.  Tr. 17.  The record, however, reflects Dr.
Rung showed Plaintiff how to walk with a cane to help stabilize
his significantly abnormal gait.  Tr. 207-208.  Dr. Rung
concluded the cane would be particularly helpful for Plaintiff
when walking long distances.  Tr. 208.  The importance the ALJ
attached to a prescription for an assistive device is not clear
nor is it clear on this record whether a prescription is actually
necessary for assistive devices.  In any event, the record
contradicts the ALJ's assertion that Plaintiff's physicians did
not instruct Plaintiff to use an assistive device.

In addition, the ALJ also noted Plaintiff did not appear at
the hearing with an assistive device.  Tr. 17.  The record from
the hearing, however, reveals Plaintiff, in fact, used a walker
at the hearing and he pointed it out to the ALJ during his
testimony.  Tr. 34-35, 47.  Plaintiff attested he used the walker
"every time I go to the store now," which helped to manage the
pain of walking.  Tr. 34-35, 46-47.

The Court finds on this record the ALJ's conclusion that
Plaintiff was not prescribed and did not use an assistive device

is unsupported by substantial evidence in this record.

**C.  Plaintiff's activities of daily living.**

The ALJ also discredited Plaintiff's testimony on the ground that his reported activities of daily living belied his claims of disability.  Tr. 13-17.  The ALJ notes Plaintiff stated he was able to walk the two-mile round trip to the store, played sports with his children, provided care for his children, performed household chores and yard work, and went camping with his family. Tr. 13-16.

Plaintiff testified he had "good days" and "bad days." Tr. 29-30, 33-38.  On good days he could perform some household chores such as vacuuming and dishes.  Tr. 34-37.  He testified, however, that he required breaks, could only perform chores for a short duration, and risked exacerbating his pain.  Tr. 34-37. Plaintiff stated he could use a gas weed-eater in his yard, but only for 20-30 minutes and usually required breaks if he worked that long.  Tr. 30.  Plaintiff also stated he could shoot basketball or throw the football with his children, but that he could not do so regularly or without pain.  Tr. 37-38, 42-43. Plaintiff also attested he went camping on one occasion, but his nephews came along to ensure that he did not have to be responsible for activities such as finding firewood.  Tr. 40.  On bad days, Plaintiff testified he could not perform any of these activities and instead had to spend much of the day laying down.

Tr. 34-36.  Plaintiff attested he had about an equal number of good and bad days.  Tr. 34.

The ALJ did not identify any evidence that contradicted Plaintiff's characterization of his activities of daily life. Instead the ALJ found Plaintiff was capable of each of the activities he named without accounting for the limited duration he could perform them and the pain they caused.  In any event, Plaintiff's ability to perform limited household chores or to engage in some physical or recreational activities does not undermine his credibility.  In *Vertigan v. Halter*, the Ninth Circuit held:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be "utterly incapacitated" in order to be disabled. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain.  A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.

260 F.3d 1044, 1050 (9th Cir. 2001).  On this record the Court concludes Plaintiff's limited ability to perform activities of daily living is not a legitimate basis for finding Plaintiff's testimony was not credible.

15 -  OPINION AND ORDER

**D.    Gap in Plaintiff's medical treatment.**

Finally, the ALJ discredits Plaintiff's testimony on the ground that he did not seek medical treatment between February 2007 and July 2008.  Tr. 17.  For this reason, the ALJ found Plaintiff's symptoms were not as severe as he reported.  Tr. 17.

The Court notes it has already found the medical evidence shows Plaintiff's condition was congenital, chronic, and painful. In addition, the record reflects Plaintiff suffered from pain daily and did so for much of his life due to his hip impairments. *See, e.g.,* Tr. 41-42, 139-40, 219.  The record also reflects during much of 2007 and 2008,  Plaintiff struggled with diverticulitis, a painful intestinal condition that led Plaintiff to visit the emergency room several times and ultimately required two surgeries including the removal of a section of his colon. Tr. 192-203, 245-54, 311-92.  Dr. Rung described Plaintiff's abdominal impairments as "[v]ery significant."  Tr. 207.  The record also reflects Plaintiff continued to suffer from symptoms of abdominal disorders until he died from upper gastrointestinal bleeding in early 2010.  Tr. 431-44.

In addition, the record reflects Dr. Rung wished to see Plaintiff after February 2007 for follow-up treatment of his hip impairments, but his health insurance would not allow him to see her for further treatment.  This is another explanation for Plaintiff's lack of treatment for his hip impairment after

February 2007.  Tr. 208.

The record also reflects Plaintiff sought treatment for his depression and anxiety in April 2007 at which time he continued to complain of significant hip, back, and leg pain.  Tr. 219. Ultimately the Court concludes even though a gap in treatment has been held to be a lawful basis to discredit a claimant, it is not a clear and convincing basis to do so in this case because Plaintiff continued to receive medical care for significant impairments during the gap identified by the ALJ.  Thus, the fact that Plaintiff did not seek treatment for his hip impairments between February 2007 and July 2008 is not a clear and convincing basis for the ALJ to discredit Plaintiff's testimony as to his consistent and objectively verified pain.

In summary, the Court concludes the ALJ erred when he discredited Plaintiff's subjective symptom testimony because the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for doing so.

**II. ALJ's Reasons for Discrediting the Opinion of Dr. Hindmarsh.**

Plaintiff contends the ALJ did not give legally sufficient reasons for discrediting the opinion of Dr. Hindmarsh.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial

17 -  OPINION AND ORDER

evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**A.    Dr. Hindmarsh's Opinion.**

Dr. Hindmarsh was Plaintiff's treating physician for several years beginning in 2006 and treated Plaintiff on dozens of occasions.  Tr. 180-82, 258-79, 414-32, 453-55.  Dr. Hindmarsh diagnosed Plaintiff with and treated Plaintiff for diverticu-litis, severe arthritis of the left hip, muscle weakness and pain due to nerve damage, LCPD with limited mobility in the hips and spine, necrosis of the femoral head, anxiety, and depression. Tr. 180-82, 258-79, 414-32, 453-55.  In particular, Dr. Hindmarsh repeatedly noted Plaintiff's pain and limited mobility in his

left hip.  Tr. 212-17, 224-32.

On July 15, 2008, Dr. Hindmarsh provided a form to the Oregon Department of Human Services in which he opined Plaintiff was unable to participate in the ODHS JOBS programs, including Job Search (20-40 hours a week of job research), Work Readiness (classroom activity five days per week that allows participants to sit, stand, or be mobile), Work Experience (on-the-job training that allows for varied hours and accommodates disabilities), and Vocational Rehabilitation Program.  Tr. 258. Dr. Hindmarsh concluded Plaintiff was disabled by his LCPD, a life-long condition that Dr. Hindmarsh expected to worsen over time.  Tr. 258.  In concert with his opinion, Dr. Hindmarsh assessed Plaintiff's RFC.  Tr. 259-60.  Dr. Hindmarsh opined, inter alia, that Plaintiff could lift or carry a maximum of five to ten pounds, could stand and/or walk one hour out of an eight-hour day, and could sit for two hours out of an eight-hour day. Tr. 259-60.

On March 2, 2009, Dr. Hindmarsh spoke with Plaintiff's counsel by telephone during which Dr. Hindmarsh repeated his opinion that Plaintiff was disabled because of his hip condition and he could not perform work that required him to sit or to stand on a sustained basis.  Tr. 269.  On April 6, 2009, at the request of Plaintiff's counsel, Dr. Hindmarsh provided counsel with his assessment of Plaintiff's medical conditions and his

19 -  OPINION AND ORDER

ability to work.  Tr. 269.  Dr. Hindmarsh noted Plaintiff suffers
from necrosis of the left hip confirmed by x-ray, which causes
Plaintiff pain, limited mobility, and difficulty with sitting.
Tr. 269.

**B.  ALJ's Decision.**

The ALJ stated the following with respect to Dr. Hindmarsh's
opinion:

> Overall, I give controlling weight to the
> opinion of claimant's primary care physician
> Dr. Rick Hindmarsh, but little weight to the
> form completed by Dr. Hindmarsh on July 2008
> for the Oregon Department of Human Services
> regarding the Self-Sufficiency Program. . . .
> No documentation was provided to support such
> opinion.  While claimant's diagnosis of
> Legg-Calve-Perthes disease will not change,
> claimant has by his own acknowledgment
> indicated that he can perform activities of
> daily living on a regular and consistent
> basis.  The Physical Residual Functional
> Capacity assessment form is given slight
> weight to the extent that it is consistent
> with the other medical evidence of record,
> but again claimant himself has indicated what
> he is capable of doing and those activities
> exceed what is noted in the Physical RFC form
> contained in Exhibit 13F.  Finally, I give
> little weight to the opinion of Dr. Hindmarsh
> contained in Exhibit 15F again for the
> reasons set forth above.  I also find that
> Dr. Hindmarsh's statement that claimant
> cannot work is an opinion reserved to the
> Commissioner.

Tr. 18.

The Court does not find the ALJ's assignment of "controlling
weight" to Dr. Hindmarsh's opinion meaningful in light of the
fact that the ALJ otherwise contradicted himself by giving

20 -  OPINION AND ORDER

"little" or "slight weight" to Dr. Hindmarsh's opinions.  Tr. 18.
In light of these contradictions, the Court will address the
specific reasons the ALJ gave for discrediting Dr. Hindmarsh's
opinion.

   **C.  Analysis.**

   The ALJ concluded Dr. Hindmarsh did not provide any
objective medical evidence to support his evaluation of
Plaintiff's RFC or his opinion given to ODHS regarding
Plaintiff's disability.  Tr. 18.  The Court notes the ODHS forms
do not call for submission of medical records to support a
physician's opinion.  Tr. 258-60.  As noted, however, even though
the lack of objective medical findings can be a basis for
discrediting a treating physician's opinion, Dr. Hindmarsh's
opinions are, in fact, supported by his review of Plaintiff's x-
rays, an EMG test, and his longstanding relationship with
Plaintiff as his treating physician.  As the Ninth Circuit has
held, a treating physician with a long-standing relationship with
a plaintiff is "especially qualified to evaluate reports from
examining doctors, to integrate the medical information they
provide, and to form an overall conclusion as to functional
capacities and limitations, as well as to prescribe or approve
the overall course of treatment." *Id*. at 833.  Thus, in light of
the record, the fact that Dr. Hindmarsh did not submit medical
records to support his disability opinion provided to ODHS is not

a legitimate basis to discredit his opinion.

The ALJ also discredited Dr. Hindmarsh's opinion on the ground that it is inconsistent with Plaintiff's stated activities of daily living.  Tr. 18.  The Court, however, has already rejected the ALJ's characterization of Plaintiff's activities of daily living and does not find any evidence in the record that contradicts Dr. Hindmarsh's opinion that Plaintiff cannot sustain work-related activity for more than a few hours a day.

The ALJ also found Dr. Hindmarsh's opinion is "inconsistent with the other medical evidence of record."  Tr. 18.  The ALJ appears to identify the EMG test, the pelvic x-rays, and the opinion of Disability Determination Services (DDS)[3] physician as inconsistent with Dr. Hindmarsh's opinions.  Tr. 15, 16, 18. Neither the EMG study nor the x-rays, however, undermine Dr. Hindmarsh's opinion.  Tr. 179, 206, 306, 393.  Neither the technicians' assessment of the x-rays nor the EMG study contain comments on either the symptoms resulting from or the limiting effects of Plaintiff's impairments.  Moreover, Dr. Hindmarsh indicated his review of these objective tests informed his conclusion that Plaintiff was disabled.  Tr. 182, 269.  In addition, Dr. Hindmarsh's opinion is substantially corroborated

---

[3] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

by Dr. Rung, a neurologist, who confirms Dr. Hindmarsh's diagnoses of LCPD, nerve damage over the "entirety of the left lower extremity," worsening muscle atrophy, weakness and limited range of motion in the hips, and an abnormal gait. Tr. 207-08.

In summary, the Court does not find any opinion by a treating or examining physician that contradicts Dr. Hindmarsh's opinion of Plaintiff's functional capacity, and the ALJ's reliance on the opinion of a DDS physician alone is an insufficient basis for rejecting the opinion of a treating physician. *See Lester*, 81 F.3d at 831.

The Court, therefore, concludes on this record that the ALJ erred when he discredited Dr. Hindmarsh's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

Although Plaintiff alleges the ALJ erred in other ways, the Court need not address those arguments in light of its conclusion that the ALJ erred when he discredited Plaintiff's treating physician.


## REMAND

Having found the ALJ erred when he improperly discredited Plaintiff's subjective symptom testimony and the opinion of Dr. Hindmarsh, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of

23 -  OPINION AND ORDER

benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for discrediting the opinion of Dr. Hindmarsh, the Court credits his opinion as true. *See Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004)(when "the ALJ fail[s] to provide legally sufficient reasons

24 - OPINION AND ORDER

for rejecting . . . [a] physician['s] opinion[]," the court credits that opinion as true). *See also Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is credited as a matter of law).

When credited, Dr. Hindmarsh's opinion establishes Plaintiff cannot sit for more than two hours in an eight-hour workday and cannot stand for more than one-hour workday. Tr. 259. At the hearing before the ALJ, the VE also attested a claimant who needed to recline for even brief periods outside of the normal break schedule at a sedentary level of exertion would not be able to sustain competitive employment. Tr. 54. The record, therefore, reflects Plaintiff's impairments render him unable to work on a regular and continuing basis for "8 hours a day, for 5 days a week, or an equivalent schedule." *See* SSR 96-8p, at *1.

Accordingly, the Court concludes on this record that Plaintiff cannot sustain work-related physical activities on a regular and continuing basis and, therefore, was disabled and entitled to benefits for the relevant period. Thus, the Court finds additional proceedings would be futile.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of

benefits.

IT IS SO ORDERED.

DATED this 10th day of May, 2011.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge